UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN P. HOLLINGSWORTH, et al., : | |
| : | CIVIL ACTION NO. **3:CV-09-0838** |
| Plaintiffs, : | |
| : | (Judge Munley) |
| v. : | (Magistrate Judge Blewitt) |
| : | |
| RANGE RESOURCES-APPALACHIA, LLC : | |
| : | |
| Defendant : | |

## REPORT AND RECOMMENDATION

**I. Background**.

This breach of contract (Count I) and declaratory judgment (Count II) action was commenced on March 30, 2009, in the Court of Common Pleas of Bradford County, Pennsylvania, by Plaintiffs John, James and Kenneth Hollingsworth against Defendant Range Resources-Appalachia, LLC ("RRA"). (Doc. 1, Ex. A). Defendant filed a Notice of Removal of this action to this Court, pursuant to 28 U.S.C. § 1441, based on diversity jurisdiction. 28 U.S.C. § 1332. (Doc. 1, pp. 2-3).[1] This case has been assigned to the undersigned Magistrate Judge for pre-trial matters pursuant to 28 U.S.C. § 636(b).

In response to the Complaint, on May 11, 2009, Defendant RRA filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12 (b)(6). **(Doc. 6).** Defendant simultaneously filed its support Brief with exhibits (Exs. A-D). (Doc. 7). The Plaintiffs filed their opposition Brief on May 22, 2009. (Doc. 8). Defendant then filed a Reply Brief with an exhibit, *i.e.* a copy of the Court's decision in *Lyco v. RRA*,

---

[1]Plaintiffs are all residents of Pennsylvania and Defendant is a Delaware corporation with its principle place of business not in Pennsylvania. Plaintiffs did not move to remand the case back to state court.

Civil No. 09-249, M.D. Pa., on June 8, 2009. (Doc. 12). Upon request of Defendant, we heard oral argument, on the record, regarding their pending Motion on June 30, 2009. (Doc. 13).

Presently before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). **(Doc. 6)**. The Motion is ripe for disposition.

## II. Allegations Giving Rise to the Complaint.

The Complaint contains two counts. Count I is for Breach of Contract and Count II is for Declaratory Judgment. (Doc. 1, Ex. A, pp. 4-5).

The following factual allegations are extracted from the Complaint:

5. Plaintiffs own 66 acres of real property located in Lichfield Township, Bradford County, Pennsylvania at tax parcel number 23-34-53 and more particularly described by deed at Book 191, Page 596 of the Bradford County Record of Deeds, (hereinafter "Property").

6. On or about June 8, 2008, Defendant offered to enter into a paid-up oil and gas lease with plaintiffs for a term of five (5) years on sixty-six (66) acres of real property as described above for the payment of a lease bonus and delay rental in a lump sum amount of $165,000.00. A copy of the Lease tendered and signed by plaintiffs is attached hereto and incorporated by reference as Exhibit "A".

7. The lease was delivered by mail sent to the Plaintiff J.P. Hollingsworth by Kenny Gunter, field land man Range Resources, along with an undated letter, a copy of which is attached hereto and incorporated by reference as Exhibit "B".

8. The lease was accepted by plaintiffs and signed before a notary on July 28, 2008 and forwarded by mail to defendant on August 13, 2008.

9. The defendant returned the lease to plaintiffs marked "Void" by letter dated December 16, 2008 stating that the lease was not approved by management.

(Doc. 1, Ex. A, ¶s' 5.-9.).[2]

---

[2] A copy of Plaintiffs' Complaint with its attached exhibits is also found at Doc. 7-2.

Essentially, Plaintiffs allege that they formed a contract with Defendant that included a bonus and delay rental payment, and that all contingencies required for the payment was met.[3] According to Plaintiffs, "the parties agreed that when the Plaintiffs delivered the lease to the Defendants (sic) the bonus payment was due." (*Id.*, ¶ 26.). Plaintiffs aver that despite the contract which required Defendant to make the lease bonus and delay rental payment within 90 days of the lease date, Defendant failed to make the required $165,000.00 payment pursuant to the contact, *i.e.* lease agreement.

Plaintiffs claim in Count I that Defendant breached the lease agreement it entered into with them by voiding the lease and by failing to pay them the bonus and delay rental payment. In Count II, Plaintiffs seek the Court to declare the lease with Defendant was formed and was valid, and that the bonus and delay rental payment is due and payable by Defendant to them.[4]

### III. Motion to Dismiss Standard.

The Court in *Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009), set forth the Motion to Dismiss standard of review, as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. –, 127 S. Ct. 1955 (2007), and as refined in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), as follows:

> The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. *Neitzke; Scheuer v. Rhodes*, 419 U.S. 232 (1974). A complaint must be dismissed pursuant to Rule

---

[3] The parties refer to the bonus and delay rental payment collectively as the "bonus payment".

[4] Plaintiffs attached a copy of the lease agreement they allege was accepted and agreed to by Defendant as Ex. A to their Complaint, Doc. 7-2, Ex. A.

12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, ----, --- L.Ed.2d ----, ----, 2009 WL 1361536 (May 18, 2009) (specifically applying *Twombly* analysis beyond the context of the Sherman Act). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See *California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir.2004) citing *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Nor must the court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 556, citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." *Smith v. Sullivan*, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 232, quoting *Twombly*, 550 U.S. at 556 n. 3.

## IV. Discussion.

Initially, we note that during oral argument (as well as in its Briefs), Defendant relied upon the correct motion to dismiss standard under *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, but Plaintiffs did not. (See also Doc. 7, pp. 4-5 and Doc. 12, p. 2). Rather, at oral argument, Plaintiffs relied upon an outdated motion to dismiss standard, insisting that they only were required to make a general assertion that a contract existed, that Defendant breached it, and that they were

4

entitled to relief. Plaintiffs argued they were entitled to discovery regarding their claims and that Defendant's arguments were properly suited for a summary judgment motion after discovery. We agree with Defendant that its Motion to Dismiss should be granted at this early stage of the case since Plaintiffs have failed to state sufficient "facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Twombly*, 550 U.S. at 556 n. 3; *Lyco Better Homes, Inc. v. Range Resources-Appalachia, LLC*, Civil No. 09-0249, M.D. Pa., 5-21-09 Memorandum, slip op. pp. 2-4.[5]

As this is a case based upon diversity jurisdiction of this Court, 28 U.S.C. § 1332, we apply Pennsylvania law. *See Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 561, 563 (3d Cir. 2003).[6] We agree with Defendant that Plaintiffs have not sufficiently plead a breach of contract claim and that its Motion to Dismiss should be granted since no contract which included a bonus and rental delay payment was ever formed between it and Plaintiffs. (Doc. 7, pp. 5-11). "[C]ontract law protects the expectation interests of contracting parties based on a voluntary agreement that defines their relationship. Protection is limited to those individuals specifically named in the contract, and enforcement is based on the manifestation of the intent between the parties." *Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095, 1104 (3d Cir. 1980).

In *WP 851 Associates, L.P. v. Wachovia Bank, N.A.*, 2008 WL 114992, *3 (E.D. Pa. 2008)(footnote omitted), the Court stated:

---

[5]Defendant attached a copy of the *Lyco* Court's May 21, 2009 Memorandum to its Reply Brief, Doc. 12-2.

[6]Both parties recognize that Pennsylvania substantive law applies to this case.

> To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir.2003) ( *quoting CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa.Super.Ct.1999)). The important inquiry is whether the parties "manifested an intention to be bound by [a document's] terms and whether the terms are sufficiently definite to be specifically enforced." *ATACS Corp. v. Trans World Commc'ns., Inc.,* 155 F.3d 659, 665 (3d Cir.1998). "Whether the parties are merely negotiating a contract, or entering into a present contract, is purely a question of intention." *Windsor Mfg. Co. v. S. Makransky & Sons,* 472,322 Pa. 466, 186 A. 84, 86 (Pa.1936).

See also *Gundlach v. Reinsrien*, 924 F.Supp. 684, 688 (E.D. Pa. 1996).

We agree with Defendant that Plaintiffs' pleading does not meet the stated elements required for a breach of contract action under Pennsylvania law. We also find futility of allowing Plaintiffs leave to amend their Complaint since no contract was ever formed with Defendant because it did not manifest an interest to be bound by the terms of the lease agreement without its management's approval.

In *County of Dauphin, Pennsylvania, v. Fidelity and Deposit Company of Maryland*, 770 F. Supp. 248, 251 (M.D. Pa. 1991), this Court stated:

> Under Pennsylvania law, the interpretation of a contract requires an initial determination by the court of whether the contract language is ambiguous, or is clear and unambiguous. *Polish Amer. Machinery Corp. v. R.D. & D. Corp.,* 760 F.2d 507, 512 (3d Cir. 1985). If the language is ambiguous, the court must turn the interpretation of the contract over to the jury. If the language is clear, however, the court must interpret the agreement. *Id.* Contractual language is ambiguous when it is "reasonably susceptible of different construction, is obscure in meaning through indefiniteness of expression or has a double meaning." *Commonwealth, Dept. Of Trans. v. Mosites Constr. Co.*, 90 Pa.Commw. 33, 36, 494 A.2d 41, 43 (1985). A contract is not ambiguous by the mere fact that the parties disagree on the proper interpretation to be given the

6

> language. *Commonwealth State Highway & Br. Authority v. E.J. Albrecht Co.*, 59 Pa. Commw. 246, 251, 430 A.2d 328, 330 (1981).
>
> We are mindful of the fact that Pennsylvania courts apply the "plain meaning" rule of interpretation of contracts, an approach to contract interpretation that assumes that "the intent of the parties to a written contract is . . . embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart v. McChesney*, 498 Pa. 45, 48-49, 444 A.2d 659 (1982). This approach is found to "enhance the extent to which contracts may be relied upon by contributing to the security of belief that the final expression of *consensus ad idem* will not later be construed to import a meaning other than that clearly expressed." *Id.* at 52, 444 A.2d at 663.

In construing a contract to determine if it is ambiguous under Pennsylvania law, the court looks to the four corners of the document. *See Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F. 3d 294, 300 (3d Cir. 2002).

In *Benchmark Group, Inc. v. Penn Tank Lines, Inc.*, 612 F. Supp. 2d 562, 574 (E.D. Pa. 2009), the Court stated:

> "[t]he task of interpreting a contract is generally performed by a court, rather than by a jury.... [t]he goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983) (internal citations omitted). "The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385, 390 (1986). Thus, "a contract that is unambiguous on its face must be interpreted according to the natural meaning of its terms, unless the contract contains a latent ambiguity, whereupon extrinsic evidence may be admitted to establish the correct interpretation." *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 96 (3d Cir.2001).

We agree with Defendant and its first argument that no contract was ever formed between it and Plaintiffs since Plaintiffs offered the oil and gas lease to Defendant and Defendant rejected the lease agreement when its senior management did not approve of it, and marked it "Void."

7

Plaintiffs signed the "Dear Property Owner" ("DPO") letter which initially stated, "Thank you for entering into an oil and gas lease with our firm." (Doc. 7-2, Ex. C).[7] Plaintiffs also executed the lease agreement dated July 28, 2008. (*Id*., Ex. A). However, as Defendant points out, the DPO letter significantly also stated, "<u>RANGE RESOURCES - APPALACHIA, LLC hereby agrees to pay the following oil and gas owner the amount below set forth subject to approval of title and management lease review</u>." (*Id*.) (emphasis original). Further, the DPO was not signed and dated by Defendant's representative, its Landman (Kenny Gunter). Defendant then returned the lease to Plaintiffs, *sans* any bonus payment, with a letter to them dated December 16, 2008, which stated as follows:

> The above referenced oil and gas lease that you offered to Range Resources - Appalachia, LLC ("Range") has been reviewed by Range's senior management and was not approved. Factors considered in Range's decision included the drastic drop in oil and gas prices, the downturn of the U.S. economy and the resulting effects on the credit markets. It is unfortunate that circumstances beyond Range's control have caused us to come to this decision. Accordingly, the proposed lease is being returned to you with this correspondence.

(*Id*., Ex. D).

---

[7]As noted by the Court in *White v. Probation Office*, 2008 WL 3837045, *1, n. 3 (M.D. Pa.),

> "[t]he court may consider documents of record and exhibits submitted by the parties when evaluating a motion to dismiss. *See Tilbury v. Aames Home Loan,* 199 F. App'x 122, 125 (3d Cir.2006) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384-85 n. 2 (3d Cir.1994)) (observing that a court may consider exhibits submitted by the parties when ruling on a motion to dismiss)."

We find, as Defendant argued, that no contract was ever formed in this case since both parties did not show an intent to be bound unless the least offer of Plaintiffs was approved by Defendant's management. We concur with Defendant and find that the very recent *Lyco* case is directly on point with our case, and that the *Lyco* Court properly found that no contract existed between RRA and Plaintiffs under very similar facts to our case. Further, during the oral argument in our case Plaintiffs' counsel failed to distinguish the *Lyco* case upon which Defendant RRA relied.

The *Lyco* Court stated:

> In its motion to dismiss, Range Resources argues that both counts of the complaint should be dismissed. As to the breach of contract claim, it argues that bonus payments sought are not part of the lease agreement between the parties, but even if the court finds the bonus payments are part of the agreement, Range Resources exercised its right to surrender the leases which cancelled all liabilities under the leases.

(Doc. 12-2, p. 6).

The *Lyco* Court concluded as follows:

> In Pennsylvania, "a lease is in the nature of a contract and is controlled by principles of contract law. Amoco Oil Co. v. Snyder, 478 A.2d 795, 798 (Pa. 1984). "To support a claim for breach of contract, a plaintiff must allege: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contact; and 3) resultant damage." Church v. Tentarelli, 953 A.2d 804, 808 (Pa. Super. Ct. 2008).
>
> There is no contract here. Plaintiffs, the land owners, each made an offer when they signed the documents. The offeree, defendant, could have accepted or rejected the offers. Defendant communicated a rejection of the offers by returning the documents to plaintiffs marked with the "void" stamp.

(*Id.*, pp. 6-7).

The Court in *Lyco* then granted Defendant RRA's motion to dismiss the Complaint and its remaining breach of contract claim since it found that no contract existed between the parties. (*Id.*, pp. 7-8).[8] The lease agreement and DPO letter which Plaintiffs signed, *i.e.* Plaintiffs' offer, and sent to Defendant clearly required approval by Defendant's management before it was intended to become effective. The lease Plaintiffs offered to Defendant was not approved by Defendant's management which was a condition precedent of the lease, and Plaintiffs' offer was rejected. Thus, no contract was ever formed. Therefore, Defendant was not obligated to pay Plaintiffs the bonus payment at issue herein.

Even though the DPO letter began by thanking Plaintiffs for entering into a lease with Defendant, we agree with Defendant that the lease, in order to become a binding contract, was still subject to approval of both Plaintiffs' title to the land and to approval by Defendant's management. As Defendant argued, the Court must give effect to the language of the document, and it cannot simply ignore the stated conditions. Thus, reading the DPO letter as a whole, it is apparent that Defendant's intent was not to accept Plaintiffs' lease offer without good title and without its management's approval. Also, just because the title to Plaintiff's property was found acceptable by Defendant, this did not satisfy both conditions required for a contract to be formed. The DPO letter was clearly written in the conjunctive, and the Plaintiffs' lease offer required both title approval and approval by Defendant's management. In fact, at oral argument, Plaintiffs' counsel

---

[8]We note that in *Lyco*, Plaintiff filed a Notice of Appeal with the Third Circuit on June 2, 2009, and that this appeal, docketed to USCA Case Number 09-2645, is still pending. Thus, in the alternative, it will be recommended that the present case be stayed until the Third Circuit decides the appeal in *Lyco*.

10

conceded that if Plaintiffs did not have a valid title to the subject property, Defendant did not owe them the bonus payment. Likewise, if Defendant's management did not approve of Plaintiffs' lease offer, no contract with Plaintiffs was formed, and Defendant was not obliged to give Plaintiffs the bonus payment. Further, we do not find, as Plaintiffs suggested, that the approval language in the DPO letter was ambiguous.

Moreover, we do not find that the cases cited by Plaintiffs during oral argument are on point with our case and are controlling, including the one hundred sixteen-year-old case of *McMillan v. Phila. Co.*, 159 Pa. 142, 28 A. 200 (1893). We agree with Defendant and its rationale (Doc. 12, pp. 6-7) and we do not find that the *McMillan* case lends support to Plaintiffs' position that there was an offer and acceptance between the parties in our case, particularly since the DPO letter in our case explicitly required approval of Defendant's management before a contract was formed. As Defendant states, *McMillan* did not deal with a document which had language similar to the language of the DPO letter in our case. Rather, as stated, we find that Defendant is correct (Doc. 12, pp. 3-4, 8) and that the *Lyco* case is directly on point with our case and is persuasive. We also find that based, in part, on the *Reed v. Pittsburgh Bd. of Public Educ.*, 862 A. 2d 131 (Pa. Commw. 2004), case cited by Defendant (Doc. 12, p. 4), the DPO letter Defendant sent to Plaintiffs was not an offer of Defendant to Plaintiffs as a matter of law since it clearly required further approval, not yet given, by Defendant's management. In fact, as stated, Defendant's representative did not sign the DPO letter since he had to wait for management approval. (Doc. 7-2, Ex. C).

Simply stated, since the DPO letter clearly required further approval by Defendant's management, it was not sufficiently definite to constitute an offer by Defendant as a matter of law

11

regardless of how specific the terms were in the lease agreement and the DPO letter. Defendant made it quite apparent that it did not intend to form a contract with Plaintiffs simply upon their execution of the lease agreement and DPO letter; rather, Defendant clearly indicated that it did not intend to form a contract with Plaintiffs until it obtained a further manifestation of assent, *i.e.* approval by its management.

As mentioned, we also disagree with Plaintiffs that there were any ambiguities in the DPO letter regarding the requirement that Defendant had to get management approval before it accepted Plaintiffs' offer. Nor do we find Plaintiffs are correct in arguing that when they signed the documents (*i.e.* the lease agreement and DPO letter) and sent them back to Defendant, there was a conveyance and Defendant had the right to mine natural gas under their land and they were entitled to the bonus payment.

As discussed, we find no contract existed between Plaintiffs and Defendant, and based on *Lyco*, the DPO letter and lease agreement Plaintiffs signed was their offer to Defendant. Defendant's management was required to approve of the lease, and Defendant clearly did not intend on entering into the lease without its management's approval. Thus, no contract was ever formed between Plaintiffs and Defendant.

Plaintiffs also argued that the DPO letter in our case and in the *Lyco* case were different. In *Lyco*, the DPO letter stated that "management approval of the lease" was required. In our case, as indicated above, the DPO letter stated that Defendant agreed to pay Plaintiffs the lease payment of $165,000.00 "subject to approval of title and management lease review." (Doc. 7-2, Ex. C). Plaintiffs argue that they have alleged that management lease review occurred in our case.

12

However, as discussed, and similar to the *Lyco* case, the management lease review was not complete since Defendant advised Plaintiffs on December 16, 2008, that the lease Plaintiffs offered to it was reviewed by its senior management and it was not approved. (*Id.*, Ex. D). The proposed lease, including the lease payment of $165,000.00 by Defendant to Plaintiffs, was specifically subject to approval by Defendant's management, and this approval was never given. Defendant did not intend to form a contract with Plaintiffs without the approval of the lease by management.

      Accordingly, we will recommend that Defendant's Motion to Dismiss be granted and that Plaintiffs' Complaint be dismissed pursuant to Rule 12(b)(6). We also find futility with respect to Plaintiffs' request at oral argument that they be permitted leave to amend their Complaint. We agree with Defendant that, regardless of any amendment, the DPO letter, with its requirement of management approval of the lease, was not Defendant's offer of a contract. Rather, the DPO letter Plaintiffs signed it was Plaintiffs' offer to Defendant which was not accepted by Defendant because it was not approved by Defendant's management. Therefore, no valid contract was ever formed between Plaintiffs and Defendant in this case. Defendant did not manifest an intent to be bound by the terms of the lease and DPO letter, including the bonus payment, until Plaintiffs' title was approved and the lease was approved by its management.[9] *See Conway v. King Pharmaceuticals, Inc.*, 2008 WL 4128088, *2 (M.D. Pa.)("a complaint that sets forth facts which affirmatively

---

[9]In *WP 851 Associates, L.P. v. Wachovia Bank, N.A.*, 2008 WL 114992, *4, n. 15, the Court noted, "[g]enerally, when the letters of intent contained language explicitly stating that the document was not binding or containing a condition precedent, Pennsylvania courts have held that such letters did not manifest a mutual intent to be bound and were, therefore, not enforceable contracts."

demonstrate that the plaintiff has no right to recovery is properly dismissed without leave to amend.")(citing *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002)).

**V. Recommendation.**

It is respectfully recommended that Defendant's Motion to Dismiss **(Doc. 6)** be granted and that Plaintiffs' Complaint be dismissed pursuant to Rule 12(b)(6). Alternatively, it is recommended that the Court stay this case and administratively close it until the Third Circuit Court of Appeals decides the appeal in the *Lyco* case.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 29, 2009**

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN P. HOLLINGSWORTH, et al., | : | |
| | : | CIVIL ACTION NO. **3:CV-09-0838** |
| Plaintiffs, | : | |
| | : | (Judge Munley) |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| RANGE RESOURCES-APPALACHIA, LLC | : | |
| | : | |
| Defendant | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 29, 2009.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                            s/ Thomas M. Blewitt
                                            **THOMAS M. BLEWITT**
                                            **United States Magistrate Judge**

**Dated: July 29, 2009**